Christina M. Vitale
REED SMITH LLP
811 Main Street, Suite 1700
Houston, Texas 77002-6110
State Bar No. 024071
cvitale@reedsmith.com
(713) 469-3800

James P. Duffy IV (*Pro Hac Vice* to be submitted)
Philip W. Danziger (*Pro Hac Vice* to be submitted)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Applicant,*
*The Republic of Kazakhstan*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In Re Application Pursuant To 28 U.S.C. § 1782 For Discovery From William Scott Lawler** | No. _____ <br><br> ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE REPUBLIC OF KAZAKHSTAN'S**
**APPLICATION PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 3

I.      Kozhan Purchases The Right to Explore Oil Fields in Kazakhstan ............... 3

II.     Big Sky Obtains Indirect Ownership of Kozhan ............................................ 4

III.    Big Sky Loses Its Stake in Kozhan ................................................................ 4

IV.     Big Sky's Board Resigns After Appointing Lawler as Its Sole Director and
        Officer ........................................................................................................... 5

V.      Big Sky Commences the Arbitration Against the RoK ................................... 5

VI.     █████████████████████████████████████████████
        ....................................................................................................... 5

VII.    ██████ ██████ ████ ██ ██████ ██████ ██████ ██ ███
        ........................................................................................................... 9

VIII.   ██████████████████████████████████ ....................... 10

IX.     Lawler Does Not Appear to Directly Manage Big Sky ................................ 11

X.      ████████████████████████████████████ ..................... 13

ARGUMENT ........................................................................................................ 13

I.      THE   APPLICATION   SATISFIES   28   U.S.C.   §   1782'S   THREE
        STATUTORY REQUIREMENTS ................................................................ 14

   A.   Section 1782 and Discovery in Aid of Foreign Proceedings ........................ 14

   B.   The RoK's Application Easily Satisfies Section 1782's Three Statutory
        Requirements ................................................................................................ 14

II.     THE APPLICATION ALSO SATISFIES THE FOUR DISCRETIONARY
        *INTEL* FACTORS ....................................................................................... 16

   A.   Lawler is Outside the Jurisdictional Reach of the Foreign Tribunal ............ 18

   B.   The Nature and Receptivity of the Foreign Tribunal to the Discovery Sought
        19

   C.   The Application Does Not Seek to Circumvent Any Foreign Proof-Gathering
        Restrictions or Other Policies of a Foreign Country ..................................... 19

   D.   The Subpoena Is Neither Unduly Intrusive Nor Burdensome ...................... 21

CONCLUSION ..................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Application of Caratube Int'l Oil Co., LLP*,
    730 F. Supp. 2d 101 (D.D.C. 2010) ............................................................ 18

*In re Application of Chevron Corp.*,
    709 F. Supp. 2d 283 (S.D.N.Y. 2010) ........................................................ 15

*In re Ex Parte Application of IPCom GMBH & Co. KG*,
    No. 5:14-mc-80037-EJD-PSG, 2014 U.S. Dist. LEXIS 50746 (N.D. Cal.
    Apr. 10, 2014) ...................................................................................... 16, 20

*In re Application of Minatec Fin., S.A.R.L.*,
    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ............................................ 21

*In re Application of Oxus Gold PLC*,
    2007 WL 1037387 (D.N.J. Apr. 2, 2007) .................................................. 15

*In re Application of Republic of Ecuador*,
    No. 2:11-mc-00052-GSA, 2011 U.S. Dist. LEXIS 103360 (E.D. Cal.
    Sept. 13, 2011). ................................................................................. *passim*

*In re Ex Parte Application of Rigby*,
    No. 13cv0271-MMA (MDD), 2013 U.S. Dist. LEXIS 23251 (S.D. Cal.
    Feb. 19, 2013) ...................................................................................... 15, 16

*In re Gianasso*,
    No. No. C 12-80029 MISC SI, 2012 U.S. Dist. LEXIS 25763 (N.D. Cal.
    Feb. 28, 2012) ............................................................................................ 20

*In re Int'l Judicial Assistance*,
    No. 14-mc-80083-JST, 2014 Dist. LEXIS 37028 (N.D. Cal. Mar. 19, 2014) .............. 17

*Intel Corp. v. Advanced Micro Devices, Inc*.,
    542 U.S. 241 (2004) ........................................................................... *passim*

*Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*,
    No. MC 18-103 (RMC), 2019 WL 1559433 (D.D.C. Apr. 10, 2019) .................... 15, 16

*In re Mak*,
    No. C 12-80118 SI, 2012 U.S. Dist. LEXIS 98577 (N.D. Cal. July 16, 2012) ............ 20

*In re Mesa Power Group, LLC*,
    No. 2:11-mc-270-ES, 2013 U.S. Dist. LEXIS 67091 (D.N.J. April 19, 2013) .............. 2

*Nat'l Broad. Co. v. Bear Stearns & Co.*,
   165 F.3d 184 (2d. Cir. 1999) .......................................................................... 16

*OJSC Ukrnafta v. Carpatsky Petroleum Corp.*,
   2009 WL 2877156 (D. Conn. Aug. 27, 2009) .............................................. 15

*Republic of Kazakhstan v. Biedermann Int'l*,
   168 F.3d 880 (5th Cir. 1999) ....................................................................... 16

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004) ............................................................................ 3

*In re Veiga*,
   746 F. Supp. 2d 8 (D.D.C 2010) .......................................................... 15, 21

**Statutes**

28 U.S.C. § 1782 (2012) ................................................................... *passim*

The Republic of Kazakhstan ("RoK") respectfully submits this Memorandum of Law in Support of its Application Pursuant to 28 U.S.C. § 1782 ("Application") for an Order permitting the RoK to serve a subpoena *duces tecum* and *ad testificandum* ("Subpoena") upon William Scott Lawler ("Lawler"), an individual and resident of the State of Arizona.[1]

## PRELIMINARY STATEMENT

This is a limited-purpose action brought pursuant to Title 28 U.S.C. § 1782 ("Section 1782") to obtain evidence from Lawler that the RoK needs to defend against claims that non-party Big Sky Energy Corporation ("Big Sky") has asserted against the RoK in an international investment-treaty arbitration ("Arbitration").

██████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ the investment treaty pursuant to which Big Sky commenced the Arbitration only allows companies managed and controlled by U.S. nationals with substantial business activities in the United States to assert claims against the RoK.  Lawler is in a unique position to provide that evidence, because he is Big Sky's only director and officer, and has been since 2013.

██████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[1]     A copy of the proposed Subpoena is attached to the Application as Exhibit A.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████        Lawler is Big Sky's sole director

and officer, █████████████████████████████████████████████ and

the RoK has no mechanism in the Arbitration for compelling Lawler to provide

evidence.  ██████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████

Accordingly, granting this Application will not only be just, but will directly

further Section 1782's stated goal of "provid[ing] federal-court assistance in

gathering evidence for use in foreign tribunals."  *Intel Corp. v. Advanced Micro

Devices, Inc*., 542 U.S. 241, 246 (2004); *see also In re Application of Republic of

Ecuador*, No. 2:11-mc-00052-GSA, 2011 U.S. Dist. LEXIS 103360, at *4 (E.D.

Cal. Sept. 13, 2011).  Granting the Application will also further Section 1782's

objective of "'providing [an] efficient means of assistance to participants in

international litigation in our federal courts.'"  *In re Mesa Power Group, LLC*, No.

2:11-mc-270-ES, 2013 U.S. Dist. LEXIS 67091, at *9 (D.N.J. April 19, 2013)

(quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 84 (2d Cir. 2004)).

Moreover, as the Argument section below demonstrates, the Application easily satisfies Section 1782's three statutory requirements, as well as the four discretionary factors the U.S. Supreme Court set forth in *Intel*.  This Application should therefore be granted in its entirety and the RoK allowed to issue the proposed Subpoena to Lawler.

## **BACKGROUND**

The following sections describe the factual background that gave rise to this Application.  The facts set forth below are for informational purposes only, as the merits of the underlying dispute between Big Sky and the RoK will be decided by the Tribunal in the Arbitration.

## I.    **Kozhan Purchases The Right to Explore Oil Fields in Kazakhstan**

In April of 2001, five Kazakh individuals ("Original Owners") formed a company called KoZhaN LLP ("Kozhan").  ██████████████████

████████████████████████████████████

████████████████           In early 2003, Kozhan obtained the right to explore and drill for oil in three oil fields in Kazakhstan ("Oil Rights").  ███

Exploring and exploiting the Oil Rights was an extremely expensive undertaking for which Kozhan did not possess sufficient funding.  █████████ Consequently, the Original Owners decided to sell a stake in Kozhan to a third-party.  ███

- 3 -

## II.    Big Sky Obtains Indirect Ownership of Kozhan

To obtain the funds necessary to exploit the Oil Rights, in 2003, the Original Owners sold a 90% stake in Kozhan to a special purpose vehicle incorporated in Alberta, Canada called Big Sky Energy Kazakhstan LLP ("Big Sky Canada"), which is wholly owned by Big Sky. ███████████████████████ ████████████████  By effecting that transaction, Big Sky obtained an indirect 90% ownership stake in Kozhan and the Oil Rights.

In 2005, the Original Owners then sold Big Sky Canada their remaining 10% stake in Kozhan. █████████  Following that transaction, Big Sky indirectly owned 100% of Kozhan and the Oil Rights. ███

## III.    Big Sky Loses Its Stake in Kozhan

Big Sky subsequently lost its indirect stake in Kozhan through litigation in Kazakhstan. ███████████████████  First, in August of 2006, persons related to the Original Owners successfully sued Big Sky Canada in the Kazakh courts to invalidate the original 90% transfer of Kozhan to Big Sky Canada. ███████  The court decision invalidating the transfer of the Original Owners' 90% stake in Kozhan to Big Sky Canada was eventually affirmed by the Kazakh Supreme Court. ████████

Second, additional litigation in Kazakhstan caused Big Sky Canada to lose its remaining 10% stake in Kozhan and the Oil Rights. ████████ Consequently, after multiple court proceedings in Kazakhstan that included appeals

and high court review, Big Sky Canada had to cede its entire indirect interest in Kozhan and the Oil Rights. ████████

## IV.   Big Sky's Board Resigns After Appointing Lawler as Its Sole Director and Officer

In March 2013, five years after losing its indirect interest in Kozhan and the Oil Rights, Big Sky's entire Board of Directors resigned. ██████████████ █████████████████████████████████████████ Before resigning, however, the board appointed Lawler as Big Sky's sole director, as well as its president, secretary, and treasurer. ████████ Accordingly, in in March 2013, Lawler became Big Sky's sole director and officer and, for purposes of this Application, the individual most likely to know who truly manages and controls Big Sky. ███████

## V.   Big Sky Commences the Arbitration Against the RoK

In 2017, while Lawler was the sole director and officer, Big Sky commenced the Arbitration against the RoK. ████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ █████████████

## VI.   ███████████████████████████ █████████████████████████████ ████████████████████████████████

██████████████████████████████████   ████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████ it

is undisputed that Section I.2 of the U.S.-Kazakh BIT permits the RoK to deny

treaty protection – including the offer to arbitrate contained in the U.S.-Kazakh BIT

– to any company that is controlled by non-U.S. nationals if that company does not

conduct substantial business activities in the United States.[3] ████ █████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

    ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████

    ████████████████████████████████████████████

██████████████████████████████████████████████████

---

[2]   ██████████████████████████████████████████████

[3]   Section I.2 of the U.S.-Kazakh BIT provides that "Each Party reserves the right to deny to any company the advantages of this Treaty if nationals of any third country control such company and, in the case of a company of the other Party, that company has no substantial business activities in the territory of the other Party or is controlled by nationals of a third country with which the denying Party does not maintain normal economic relations." (Ex. D. to the Duffy Decl. (Respondent's Memorial) at ¶ 308.)

**VII.**



**VIII.** ████████████████████████████████████

As the RoK has noted above, there is no mechanism in the Arbitration for the RoK to compel Lawler to give evidence.   Consequently, if Big Sky declines to

---

[4]     For the sake of clarity, witness statements in international arbitration serve as those witnesses' direct testimony and are treated as the functional equivalent of oral direct testimony in U.S. courts.

proffer Lawler as a witness in the Arbitration, and this Application is not granted, then Lawler's evidence will remain concealed from both the RoK and the Tribunal.

## IX.   Lawler Does Not Appear to Directly Manage Big Sky

Despite being Big Sky's sole director and officer, the evidence adduced in the Arbitration thus far indicates that Lawler does not actually exercise any managerial control over Big Sky and instead takes managerial direction from other undisclosed individuals.  Without burdening the Court with evidence that does not concern it, there are three readily understandable reasons for that conclusion.

First, Lawler's primary occupation seems to be practicing law at the law firm of Booth, Udall & Fuller PLC, which currently lists Lawler as a corporate and securities attorney on its website.[5]  In fact, as a securities fraud action that the SEC filed against Lawler on July 15, 2019 in the Eastern District of New York demonstrates, Lawler has been routinely acting as an attorney for companies other than Big Sky for many years and has apparently been engaging in a host of activities that would severely limit his ability to manage and control Big Sky and the Arbitration Big Sky has commenced.[6]  In short, as a full-time practicing attorney, it seems unlikely that Lawler could also be acting as the sole director of Big Sky and could exclusively control it when that is pursuing a complicated investment treaty arbitration against the RoK.[7]

---

[5]       http://boothudall.com/attorneys/w-scott-lawler (last accessed Oct. 7, 2019).
[6]       https://www.sec.gov/litigation/litreleases/2019/lr24530.htm (last accessed Oct. 7, 2019).
[7]       In this regard, it is noteworthy that Lawler was appointed Big Sky's sole director in 2013, some five years after Big Sky lost control of Kozhan and all of its business activities ceased.  Lawler did not have any role at Big Sky during its operational years.

Second, Lawler has also acted as the officer and/or director for multiple publicly traded microcaps, which further undermines the suggestion that he could exclusively manage and direct Big Sky's affairs.  Indeed, Lawler also serves (or has previously served) as the officer and/or director of, at least, nine (9) other companies registered in the United States, but which have offices and conduct operations exclusively in other jurisdictions, such as Russia and Canada.  In total, Lawler has signed more than 200 SEC filings for 59 different corporate entities.[8]



Objective evidence therefore indicates that Lawler's primary responsibilities are to practice law and to act as a director for many companies, which suggests that he is merely a titular director at Big Sky who performs no real managerial functions (or at a minimum does not exercise those functions alone).  ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Consequently,

---

[8]     http://www.secinfo.com/$/SEC/Name.asp?S=w.+scott+lawler (last accessed Oct. 7, 2019); *see also*
         http://www.secinfo.com/$/SEC/Filings.asp?As=S&Name=lawlerscottw (last accessed Oct. 7, 2019).
[9]     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

the evidence that the RoK seeks through this Application and the Subpoena will confirm or deny the RoK's suppositions.

**X.** 

**<u>ARGUMENT</u>**

The following sections demonstrate why it is proper for the Court to grant this Application.  Section I shows that the Application meets Section 1782's three statutory requirements.   Section II shows that the Application satisfies all four discretionary *Intel* factors.

## I.   THE APPLICATION SATISFIES 28 U.S.C. § 1782'S THREE STATUTORY REQUIREMENTS

### A.   Section 1782 and Discovery in Aid of Foreign Proceedings

Section 1782 authorizes district courts to order parties within their district to provide documentary and testimonial evidence in support of foreign proceedings.  28 U.S.C. § 1782 (2012); *see also In re Application of Republic of Ecuador*, No. 2:11-mc-00052 GSA, 2011 U.S. Dist. LEXIS 103360, at *4 (E.D. Cal. Sept. 13, 2011) ("The purpose of this section is to provide federal court assistance in the gathering of evidence for use in a foreign tribunal."); *Intel*, 542 U.S. at 247 ("Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals.").

The Statute specifically provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).

### B.   The RoK's Application Easily Satisfies Section 1782's Three Statutory Requirements

Applicants must satisfy three statutory requirements to prevail on a Section 1782 application.  Those three requirements are: "(1) the person from whom the discovery is sought [must] reside[] or . . . [be] found in the district of the district court to which the application is made; (2) the discovery . . . [must be] for use in a proceeding before a foreign tribunal; and (3) the application [must be] made by . . .

any interested person." *In re Ex Parte Application of Rigby*, No. 13cv0271-MMA (MDD), 2013 U.S. Dist. LEXIS 23251, at *2 (S.D. Cal. Feb. 19, 2013).   The RoK's Application easily satisfies those three statutory requirements.

First, Lawler is found within this District, because he is believed to be a resident of the State of Arizona and maintains a business address of 1255 West Rio Salado Parkway, Suite #215, Tempe, Arizona 85281.

Second, the discovery this Application seeks is for use in a proceeding before a foreign tribunal, i.e., the Arbitration, which is an investment treaty arbitration that Big Sky commenced under the U.S.-Kazakh BIT before ICSID. "District courts . . . have regularly found that arbitrations conducted pursuant to Bilateral Investment Treaties, and specifically by the ICSID, qualify as international tribunals under the statute."   *Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*, No. MC 18-103 (RMC), 2019 WL 1559433, at *7 (D.D.C. Apr. 10, 2019) (holding that "BIT Arbitration falls within the metes and bounds of § 1782(a)."); *see also In re Veiga*, 746 F. Supp. 2d 8, 22-23 (D.D.C 2010) (finding same) (citing *In re Application of Oxus Gold PLC*, 2007 WL 1037387, at *5 (D.N.J. Apr. 2, 2007); *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 2009 WL 2877156, at *4 (D. Conn. Aug. 27, 2009); *Republic of Ecuador*, 2010 WL 4027740, at *1-2; *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y. 2010)). Investment treaty arbitrations satisfy Section 1782's foreign tribunal requirement because "arbitrations pursuant to Bilateral Investment Treaties are not merely private arrangements; they are sanctioned by their governments; governments

- 15 -

participate in them, such as here." *Islamic Republic of Pakistan*, 2019 WL 1559433, at *7; *see also Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 190 (2d. Cir. 1999) ("It is clear that the 1964 legislation was intended to broaden . . . the reach of the surviving statute to intergovernmental tribunals not involving the United States."); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 882 (5th Cir. 1999) ("References in the United States Code to 'arbitral tribunals' almost uniformly concern an adjunct of a foreign government or international agency.").

Third, the RoK is an "interested person" for Section 1782's purposes, because it is the respondent in the Arbitration. *See In re Ex Parte Application of Rigby*, No. 13cv0271-MMA (MDD), 2013 U.S. Dist. LEXIS 23251, at *2 (S.D. Cal. Feb. 19, 2013) (holding that applicant "is an 'interested party' as he is a party to the [foreign] litigation"). The RoK therefore has a direct interest in receiving Lawler's evidence on the limited matters at issue here.

Accordingly, the Application meets all three of Section 1782's statutory requirements. As the following section demonstrates, the Application also satisfies the four discretionary *Intel* factors for granting a Section 1782 application.

## II.   THE APPLICATION ALSO SATISFIES THE FOUR DISCRETIONARY *INTEL* FACTORS

After determining that a party satisfies Section 1782's three statutory requirements, courts should consider the four discretionary factors annunciated by the Supreme Court in *Intel*. *See In re Ex Parte Application of IPCom GMBH & Co. KG*, 2014 U.S. Dist. LEXIS 50746, at *4 (explaining that courts should examine the

discretionary *Intel* factors after determining that Section 1782's three statutory requirements have been met); *In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *4 (identifying *Intel* factors as considerations in Court's exercise of "its wide discretion to grant discovery pursuant to section 1782").

In exercising its discretion under Section 1782, a district court should consider the "twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Int'l Judicial Assistance*, No. 14-mc-80083-JST, 2014 Dist. LEXIS 37028, at *3-4 (N.D. Cal. March 19, 2014).

The four discretionary factors the Supreme Court announced in *Intel* are:

(1)    whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid;

(2)    the nature of the foreign tribunal, the character or the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance;

(3)    whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and

(4)    whether the subpoena contains unduly intrusive or burdensome requests.

*In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *4 (citing *Intel*, 542 U.S. at 264-65).  As the following sections show, the Application easily satisfies all four *Intel* factors.

- 17 -

**A.     Lawler is Outside the Jurisdictional Reach of the Foreign Tribunal**

The first *Intel* factor clearly favors granting the Application because Lawler is not a party to the Arbitration, ███████████████████████ ████████ and cannot be compelled by the RoK or the Tribuinal to appear in the Arbitration.  As the Supreme Court explained in *Intel*:

> When the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.  In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel Corp.*, 542 U.S. at 264.

The first *Intel* factor therefore asks whether the person or entity from whom discovery is sought is a party to the foreign proceeding.  As Lawler is not and cannot be compelled by the RoK or the Tribunal to be one, this factor favors granting the Application.  *In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *6 (holding that the party from whom discovery was sought was "not a party to the international . . . [proceedings] and therefore this factor weighs in [the applicant's] favor"); *see also In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 105 (D.D.C. 2010) (Because "none of the respondents to Caratube's petition is a party to the ICSID arbitration[,] [t]his factor . . . weighs in favor of granting the petition.").

- 18 -

**B.     The Nature and Receptivity of the Foreign Tribunal to the Discovery Sought**

The second *Intel* factor examines the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign tribunal to the requested discovery.  *Intel Corp.*, 542 U.S. at 264-65.  This factor clearly favors granting the Application as well, ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ Consequently, the second *Intel* factor also favors granting the Application.

**C.     The Application Does Not Seek to Circumvent Any Foreign Proof-Gathering Restrictions or Other Policies of a Foreign Country**

The third *Intel* factor instructs the Court to consider "whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 264-65. ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████  The third *Intel* factor therefore favors the Application

as well.

████████████████████████████████████████████████

█████████████████████████████████████████████  Section 1782 does

not impose any foreign discoverability requirement, and Section 1782 applications

can be granted even when the evidence sought could not be obtained under the

procedures of the foreign court to which the evidence will be introduced.  *See In re*

*Ex Parte Application of IPCom GMBH & Co. KG*, 2014 U.S. Dist. LEXIS 50746, at

*7-8 (noting that "Section 1782 does not require the discovery sought to be

discoverable in the foreign courts"); *see also In re Mak*, No. C 12-80118 SI, 2012

U.S. Dist. LEXIS 98577, at *3 (N.D. Cal. July 16, 2012) (relating that Section 1782

imposes no foreign discoverability rule and that "there is no requirement that the

information sought be discoverable under the law governing the foreign

proceeding"); *In re Gianasso*, No. No. C 12-80029 MISC SI, 2012 U.S. Dist.

LEXIS 25763, at *3 (N.D. Cal. Feb. 28, 2012) (relating same).  Accordingly, ████

██████████████████████████████████████  even if there was

some prohibition against the collection of relevant evidence in the ICSID arbitration

– and there is not – that rule would not weigh against granting this Application.  *See*

*id.*

Consequently, the third discretionary *Intel* factor favors the Application as well.  *See In re Application of Minatec Fin., S.A.R.L.,* 2008 WL 3884374, at \*6-7 (N.D.N.Y. Aug. 18, 2008) (explaining that Section 1782 is designed to allow district courts to lend fair and efficient assistance to participants in litigation abroad; it neither contemplates nor requires district courts to become embroiled in a "legal tug-of-war" over whether the foreign tribunal would be receptive to their assistance); *In re Veiga*, 746 F. Supp. 2d at 24 (same).

### D.     The Subpoena Is Neither Unduly Intrusive Nor Burdensome

The fourth *Intel* factor also favors granting the Application, because the Subpoena is narrowly tailored to obtain non-privileged documentary and testimonial evidence from Lawler that will support the RoK's contention that Big Sky is controlled and managed by non-U.S. individuals.  As the document demands attached to the proposed Subpoena show, the RoK seeks very basic information from Lawler, such as who controls and directs Big Sky, to whom Lawler reports, and the scope of his managerial authority.  The Subpoena therefore seeks evidence that is directly relevant ███████████████████████████████████████ ████████████████████████

Moreover, the Subpoena is designed to obtain that critical information in a minimally intrusive fashion.  *See In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at \*8 ("[G]iven the relevance of the information, it is arguably less likely that issuance of the subpoena will result in undue intrusion or

---

[10] ████████████████████████████████████████████████

burden . . . .").  For example, it eschews formulations such as "any and all," and "every," and instead seeks only "documents sufficient to identify."  The Subpoena also expressly excludes privileged documents from its purview to minimize the burden imposed on Lawler and to avoid any unnecessary objections.[11]

Lastly, the Subpoena seeks information about topics that should be simple ones for Lawler to address.  Lawler will be in no way unduly burdened by stating from whom he takes his instructions and to whom he reports.  In fact, those issue should be so simple for him to address, ███████████████████████████ ███████████████████████████

Consequently, all four discretionary *Intel* factors favor granting the Application, and the Application satisfies Section 1782's statutory requirements, so the RoK should be permitted to serve the Subpoena on Lawler.

---

[11]   Likewise, RoK's request to depose Lawler is intended to avoid burdening him as much as possible, insofar as RoK proposes conducting the deposition at Lawler's own office.

## **CONCLUSION**

For all of the reasons set forth above, the RoK's Application should be granted in its entirety.

Respectfully Submitted,

DATED this 8th day of October, 2019

*/s/ Christina M. Vitale*
Christina M. Vitale
Attorneys for Applicant, The Republic of Kazakhstan
REED SMITH LLP
811 Main Street, Suite 1700
Houston, Texas 77002-6110
cvitale@reedsmith.com
Tel.: (713) 469-3800
Fax: (713) 469-3899

James P. Duffy IV
(*Pro Hac Vice* to be submitted)
Philip W. Danziger
(*Pro Hac Vice* to be submitted)
599 Lexington Avenue
New York, New York 10022
Tel.: (212) 521-5400
Fax: (212) 521-5450