Christina M. Vitale
REED SMITH LLP
811 Main Street, Suite 1700
Houston, Texas 77002-6110
State Bar No. 024071
cvitale@reedsmith.com
(713) 469-3800

James P. Duffy IV (admitted *Pro Hac Vice*)
Philip W. Danziger (admitted *Pro Hac Vice*)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Applicant,*
*The Republic of Kazakhstan*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In Re Application Pursuant To 28 U.S.C. § 1782 For Discovery From William Scott Lawler** | No. MC-19-00035-PHX-DWL |

**MEMORANDUM OF LAW**
**IN SUPPORT OF**
**THE REPUBLIC OF KAZAKHSTAN'S**
**RENEWED MOTION TO FILE DOCUMENTS UNDER SEAL**
**WITH ITS APPLICATION PURSUANT TO 28 U.S.C. § 1782**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .................................................................................................................. 3

ARGUMENT ........................................................................................................................ 6

I.   The Public Right of Access to United States Courts ................................................. 7

II.  The Information the RoK Seeks to Keep Confidential Will Not Impact the U.S. Public's Ability to Understand How this Court Resolves the Application ............................... 8

III. The Redacted Information Is Highly Confidential .................................................... 9

IV.  Disclosure of Facts About the Ongoing Arbitration Could Impede the Tribunal's Ability to Impartially Resolve It ............................................................................. 11

V.   Unnecessary Disclosure Could Negatively Impact FDI in the RoK and the Value of Its Public Debt ........................................................................................................ 13

VI.  The Tribunal Conditioned Its Assent to This Application on the RoK's Undertaking to Preserve Confidentiality ......................................................................................... 14

CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bean v. Pearson Educ., Inc.*,
   No. CV 11-8030-PCT-PGR, 2012 WL 2929631 (D. Ariz. July 18, 2012) ....................................9

*Center for Auto Safety v. Chrysler Group, LLC*,
   809 F.3d 1092 (9th Cir. 2016) ................................................................................................ *passim*

*Kamakana v. City & County of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ..................................................................................................7

*Markel Am. Ins. Co. v. Internet Brands, Inc.*,
   No. CV 17-2429, 2017 WL 10433991 (C.D. Cal. Aug. 2, 2017) ..................................................11

*Memry Corp. v. Ky. Oil Tech., N.V.*,
   No. C04-03843RMWHRL, 2008 WL 877979 (N.D. Cal. Mar. 28, 2008) .....................................9

*Nygren v. Heweltt-Packard Co.*,
   No. C07-05793 JW (HRL), 2010 WL 2107434 (N.D. Cal. May 25, 2010) ...................................9

*Ovonic Battery Co., Inc. v. Sanyo Elec. Co., Ltd.*,
   No. 14-CV-01637-JD, 2014 WL 2758756 (N.D. Cal. June 17, 2014) .....................................11, 14

*Valley Board Co. v. U.S. Dist. Court-D. Nev.*,
   798 F.2d 1289 (9th Cir. 1986) ..................................................................................................7

**Statutes**

28 U.S.C. § 1782 ................................................................................................................1, 3, 8

**Other Authorities**

Gary B. Born, *International Commercial Arbitration*, Vol. II (Wolters-Kluwer 2009) ......................12

Nigel Blackaby and Constantine Partasides with Alen Redfern and Martin Hunter,
   *Redfern and Hunter on International Arbitration*, § 2.176 (Oxford University
   Press, 5th Ed. 2009) ................................................................................................................12

Niti Bhasin and Rinku Manocha, *Do Bilateral Investment Treaties Promote FDI
   Inflows? Evidence from India*, VIKALPA, Vol. 41, Issue 4 (Sage 2016) ....................................13

# INTRODUCTION

This Memorandum of Law is submitted by Applicant Republic of Kazakhstan ("RoK") in support of its accompanying Renewed Motion to File Under Seal ("Renewed Sealing Motion"): (1) the Application Pursuant to Title 28 U.S.C. § 1782 for Discovery From William Scott Lawler ("Application"); (2) Memorandum of Law in Support of the Application ("Brief"); and (3) Exhibits A, B, C, and E to the Declaration of James P. Duffy IV ("Duffy Declaration").  The RoK submits this Renewed Sealing Motion to address deficiencies in the original sealing request that the Court identified in its Order dated October 10, 2019 denying that original sealing request.

# PRELIMINARY STATEMENT

The Renewed Sealing Motion seeks leave to redact a limited amount of highly-confidential information from four exhibits that now totaling 28 pages,[1] references to that limited information in the Application and supporting Brief, and a limited number of non-public arguments and rulings from the arbitral tribunal ("Tribunal") in the ongoing investor-state arbitration ("Arbitration") that Big Sky Energy Corp. ("Big Sky") commenced against the RoK sealed.  The Court should exercise its discretion to seal that information for five independent reasons.

First, the facts and allegations that the RoK seeks to keep confidential through a limited number of targeted redactions do not impact the U.S. public's ability to understand the pending Application for evidence pursuant to 28 U.S.C. § 1782 ("Section 1782"), why the Application was brought, or why the Application should be granted.  Consequently, preserving the confidentiality of those limited facts and allegations, which are subject to a strict confidentiality order in the ongoing Arbitration, does not undermine the basis upon which the public right of access to court records is founded – namely, the right to understand how our Judiciary functions and how it administers justice.  Simply stated, the U.S. public can

---

[1] For the avoidance of doubt, only a fraction of the 28 pages have been redacted – not the full 28 pages.

understand the Application and why it should be granted without knowing the limited facts and allegations from the Arbitration that the RoK seeks to keep confidential.

Second, the limited facts and allegations that the RoK seeks to seal are subject to a strict confidentiality order in the ongoing Arbitration and fall squarely within categories of information that courts have found provide compelling reasons for sealing. For instance, disclosing unproven conspiracy allegations concerning RoK instrumentalities would merely "gratify spite or promote public scandal," with real consequences for the RoK. *See Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (internal quotations and citations omitted). The amount and manner in which Big Sky was funded constitutes "business information," the disclosure of which might harm (a) Big Sky in any number of ways, and (b) the RoK's valuation of future oil concessions. *See id.* Consequently, there are compelling reasons for sealing the matters the RoK has sought to redact.

Third, the unnecessary disclosure of the limited facts and allegations that the RoK seeks to seal – which impact both the RoK and Big Sky – could unnecessarily impair the Tribunal's ability to impartially resolve the Arbitration by subjecting the Tribunal to public pressure on a number of sensitive topics. Unlike judicial proceedings to enforce an arbitral award that has already adjudicated the parties' claims and defenses, the Application here concerns an ongoing Arbitration that is in its early phases where the Tribunal has not yet ruled upon the merits of the dispute. The Tribunal should not be subjected to unnecessary public influence when executing its functions, which also provides compelling reasons in this context for granting the Renewed Sealing Motion.

Fourth, the unnecessary disclosure of unproven allegations that do not bear on the merits of the Application could (a) impair the RoK's ability to attract foreign direct investment ("FDI") in the future, (b) negatively impact the value of the RoK's public debt, and (c) undermine its ability to successfully sell future bonds.

Lastly, the Tribunal in the Arbitration has imposed strict confidentiality obligations on the parties and has predicated its consent to the Application on the RoK's undertaking to preserve the Arbitration's confidentiality. The Court should exercise the discretion accorded

to it in this context by honoring the Tribunal's determination that confidentiality is necessary to effectively resolve the ongoing Arbitration, because the Tribunal is the body charged with deciding the Arbitration.

The RoK has therefore posited numerous compelling reasons supported by specific facts for granting its Renewed Sealing Motion, and the RoK respectfully requests that the Court do so.

## BACKGROUND

The full background to this matter is set forth in the related Application and Brief in support of the Application. Accordingly, the RoK only restates here those facts necessary to decide this Renewed Sealing Motion.

The RoK has filed the Application to obtain evidence from William Scott Lawler ("Lawler") that will support the RoK's jurisdictional defenses in the Arbitration. The Tribunal in the Arbitration has consented to the RoK filing the Application, but predicated that consent on the RoK undertaking to preserve the Arbitration's confidentiality.

The limited information that the RoK has redacted from its Section 1782 submission could negatively impact the Arbitration and the parties to it if disclosed, but does not impact the U.S. public's ability to understand the Application, or the Court's ability to rule upon it publicly. Specifically, the RoK seeks to have the following information sealed from the following documents:

1. **Exhibit A to the Duffy Declaration** – this exhibit contains excerpts from Big Sky's Request for Arbitration, which is not publicly available. While the RoK has included this excerpted exhibit to provide basic background information about the Arbitration to the Court, the RoK seeks to redact out three short paragraphs that discuss sensitive, non-public information. The first paragraph to be redacted sets forth the funding arrangements, structures, and amounts through which Big Sky acquired and invested in a company called KoZhaN LLP ("Kozhan") to explore for oil in the RoK. Disclosing that information could impact Big Sky in unpredictable ways (by having tax, funding, or valuation

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

implications for its shareholders) and could impact the RoK's ability to value future oil concessions. The next two paragraphs to be redacted contain unproven, unfounded, and contested conspiracy allegations regarding named individuals (all of whom are private citizens) using instrumentalities of the RoK that are highly prejudicial to both the RoK and the named individuals (who are not parties to the Arbitration). Unproven allegations of that nature could harm not only the RoK and its ability to attract future investment, which directly impacts its public treasury and economy, but also the individuals named as alleged conspirators, who cannot defend themselves directly against those allegations.

2. **Exhibit B to the Duffy Declaration** - this exhibit contains excerpts from the RoK's Memorial on Jurisdiction and Counter-Memorial on the Merits and Quantum, which is not publicly available. The RoK has introduced those excerpts to confirm that it has lodged a jurisdictional objection in the Arbitration, and that its jurisdictional objection is predicated on the belief that Big Sky lacks standing to pursue its claims in the Arbitration. The information that the RoK has redacted concerns the specific manner in which the RoK has argued its jurisdictional objection – which could be valuable to other investment treaty claimants and could be used by them for improper purposes – as well as the quoted substance of document requests and rulings from the Tribunal in the Arbitration. None of that information is necessary for the public to understand the Application. Moreover, the RoK has not redacted out any publicly available information or other facts critical to the U.S. public's understanding of the Application – namely, that the RoK has lodged a jurisdictional objection in the Arbitration and does not believe that it has received all the evidence relevant and material to that objection.

3. **Exhibit C to the Duffy Declaration** - this exhibit contains four excerpted rulings on document production disputes from the Tribunal's Procedural Order

No. 3 – Annex B.  The excerpts set forth the original document requests themselves that are relevant to the RoK's jurisdictional objection, the RoK's arguments in support of those requests, Big Sky's objections and arguments in opposition, and the Tribunal's rulings.  As the Court will see from the un-redacted version of the exhibit, the arguments in support of and against those document requests are highly detailed, reference specific supporting evidence, reference associated paragraphs in the parties' merits submissions, and would give a reader detailed insight into how the Arbitration is being argued.  None of that information is necessary to the U.S. public's understanding of the Application.

4. **Exhibit E to the Duffy Declaration** – this exhibit sets forth the Tribunal's consent to the RoK filing this Application, provided the RoK undertakes to preserve the confidentiality of the Arbitration.  The RoK has redacted a limited portion of this exhibit that addresses the parties' submissions and the Tribunal's reasoning for its decision.  Importantly, the RoK has not redacted information revealing that the Tribunal has imposed strict confidentiality obligations on the parties and has predicated its consent to the Application on the RoK's undertaking to preserve the Arbitration's confidentiality, which is one of the reasons the RoK has filed this Renewed Sealing Motion.

5. **The Application and Supporting Brief** - the RoK has redacted from these documents information that is related to the redactions in the aforementioned exhibits, characterizations of Big Sky's actions in the Arbitration, as well as a limited number of non-public developments in the Arbitration that do not impact the public's ability to understand the Application.  For instance, at Paragraphs 6, 44, 51-53, 55-58, and 75 of the Application, the RoK redacted out information concerning discovery positions the parties took and rulings that the Tribunal made in relation to those positions that could unnecessarily prejudice one or both parties.  Those redactions are related to ones made in Exhibit C to the Duffy

Declaration. In Paragraphs 7, 42.b, 62-63, 70 and 72, as well as Heading H of the Application, the RoK redacted out information concerning strategic decisions one of the parties to the Arbitration made, because public disclosure of that information could paint that party (which is not a party to this Application) in a negative public light, and disclosure of that information is not necessary for the public to understand the Application. At Paragraphs 49 through 50 of the Application, the RoK redacted out references to non-public evidence put forth in the Arbitration, as well as the substance of that evidence, because it is both subject to the Arbitration's confidentiality order and does not impact the public's ability to understand the Application or how the Court will resolve it. The remaining redactions relate to information redacted from the exhibits and are mirrored in the Brief. In short, the RoK has only redacted non-public information from the Application and Brief that does not impact the public's ability to understand the Application or the Court's adjudication of it.

Consequently, the limited information that the RoK seeks to have sealed is subject to the Arbitration's confidentiality order, is in fact confidential, and is not relevant to the merits of the Application. The Court should therefore keep that information confidential by granting the Renewed Sealing Motion.

## ARGUMENT

The following sections discuss why the Court should exercise its discretion to seal the limited materials that the RoK seeks to keep confidential. Section I discusses the general right of public access to court materials in the U.S., the theories which underpin the right of access, and the Court's discretion to limit that access. Section II discusses why those theories are inapposite in this case and why the proposed redactions do not limit the public's ability to understand the Application or how the Court will resolve it.

Section III discusses why the redacted information that the RoK seeks to have sealed is truly confidential. Section IV explains why the unnecessary disclosure of that confidential

information would impede the Tribunal's ability to exercise its duties in the ongoing Arbitration.

Section V explains why the unnecessary disclosure of confidential facts about the Arbitration could impact the RoK's ability to attract FDI and the value of its public debt. Lastly, Section VI discusses the significance of the Tribunal's request that the RoK seek to keep information from the Arbitration confidential when pursuing the Application.

**I.      The Public Right of Access to United States Courts**

In the United States, there is a strong presumption in favor of allowing public access to court records. *See Center for Auto Safety*, 809 F.3d at 1096. The presumption "is not absolute," however, and can be overcome in appropriate circumstances, such as those presented here. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

The presumption of public access is predicated on the notion that the United States public has a right to understand how its courts function and how those courts administer justice. *See id.*; *Valley Board Co. v. U.S. Dist. Court-D. Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986) (explaining that public access to court files promotes understanding of the judicial process). In short, the presumption of public access exists "to 'provide the public with a more complete understanding of the judicial system and a better perception of its fairness.'" *Center for Auto Safety*, 809 F.3d at 1101 (quoting *Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993)).

To overcome the presumption of public access and seal court records, applicants must offer compelling reasons and factual bases that are founded on something more than "'hypothesis or conjecture.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "What constitutes a 'compelling reason' is best left to the sound discretion of the trial court,'" which affords this Court wide latitude to decide what to seal. *Id.* at 1097 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 598-99 (1978)).

In this case, the Court should exercise that discretion to find that compelling reasons for sealing exist, because: (1) the redacted information does not impact the U.S. public's ability to understand the Application or why it should be granted; (2) the redacted information is

highly confidential; (3) disclosure of the redacted information could impair the Tribunal's ability to impartially resolve the Arbitration free from public influence; (4) unnecessary disclosure of the redacted information could unnecessarily and unfairly harm the RoK's ability to attract FDI and the value of its public debt; and (5) the Tribunal has already indicated that confidentiality is important to the proper functioning of the Arbitration, which is a determination the Court should respect.

**II.     The Information the RoK Seeks to Keep Confidential Will Not Impact the U.S. Public's Ability to Understand How this Court Resolves the Application**

None of the limited information that the RoK seeks to seal through narrow redactions will impact the U.S. public's ability to understand the Application before the Court, or how the Court will resolve that Application. Consequently, the theory that underpins the public right of access to court documents in the United States is not implicated in this case.

To resolve the RoK's Application, the public first needs to understand that Section 1782 permits U.S. courts to order someone found in their District to provide documentary and testimonial evidence in support of a foreign proceeding. That fact is readily disclosed in the Application.

The U.S. public next needs to understand that: (1) the Arbitration is pending against the RoK; (2) the RoK has lodged jurisdictional defenses in that Arbitration; (3) the RoK has approached this Court for assistance under Section 1782 to obtain evidence from Lawler that will help the RoK pursue those jurisdictional defenses; and (4) Lawler is found in this District and can be compelled to provide that evidence. Any additional information, such as the details of unproven conspiracy allegations, the names of foreign nationals alleged to have engaged in unproven conspiracies, or interim rulings in the confidential Arbitration, do not bear on the Application or impact the Court's ability to publicly explain its rationale for granting the Application. In short, the U.S. public does not need to see unproven conspiracy allegations, the details of parties' claims and defenses, or the details of interim evidentiary rulings to

understand how this Court will properly administer justice by granting the Application and compelling Lawler to give evidence.

### III. The Redacted Information Is Highly Confidential

Even if the targeted redactions that the RoK seeks to have sealed were somehow relevant to the public's understanding of the Application, that information would nevertheless be subject to protection, because it is highly confidential. Accordingly, there are compelling reasons to seal that information.

For instance, in Exhibit A to the Duffy Declaration, which contains excerpts from Big Sky's request for arbitration, the RoK has redacted out non-public information about the manner and amounts in which Big Sky acquired and funded Kozhan to explore for oil in the RoK. The disclosure of that information – which has no bearing on the Application – could nevertheless impact the valuation of future oil concessions in the RoK. Disclosing that information could also impact Big Sky in unpredictable ways (by having tax, funding, or valuation implications for its shareholders). Courts routinely seal this type of confidential financial information. *See Center for Auto Safety*, 809 F.3d at 1097 (explaining that "business information that might harm a litigant's competitive standing" should be redacted); *Nygren v. Heweltt-Packard Co.*, No. C07-05793 JW (HRL), 2010 WL 2107434, at *3 (N.D. Cal. May 25, 2010) (protecting information that could "could harm [the defendant's] financial interests and its ability to maintain its competitive standing"); *Memry Corp. v. Ky. Oil Tech., N.V.*, No. C04-03843RMWHRL, 2008 WL 877979, at *2 (N.D. Cal. Mar. 28, 2008) (sealing the "financial terms of a[n] . . . agreement" between the parties); *Bean v. Pearson Educ., Inc*., No. CV 11-8030-PCT-PGR, 2012 WL 2929631, at *2 (D. Ariz. July 18, 2012) (finding good cause to prevent "disclosure of nonpublic financial information").

In that same exhibit, the RoK has also redacted out unproven, unfounded, and contested allegations about purported conspiracies by named private citizens to unlawfully employ RoK instrumentalities to expropriate Big Sky's investment. Those unproven allegations – which are wholly unnecessary to the Court's resolution of the Application – are precisely the type of information that the Court should use its discretion to seal. *See Center for Auto Safety*, 809

1  F.3d at 1097 (relating that materials which "'gratify public spite or promote public scandal'"
2  are the types that should be sealed (internal citations omitted)).
3    Notably, the RoK has not sought to redact out information in Exhibit A that is critical
4  to the public's understanding of the Application (such as the fact that the Arbitration is
5  pending, the parties to it, the general nature of the claimant's claims, or the general basis for
6  those claims). The RoK has also not sought to redact out other publicly available information
7  that could be gleaned from publicly available sources.
8    The RoK followed an identical approach in Exhibit B to the Duffy Declaration, which
9  contains excerpts from the RoK's Memorial on Jurisdiction and Counter-Memorial on the
10 Merits and Quantum in the Arbitration. In Exhibit B, the RoK has redacted out the non-public
11 particulars of its jurisdictional arguments, the disclosure of which could harm (a) Big Sky
12 by subjecting it to criticism for the manner in which it has employed a U.S. company to obtain
13 the benefits of a U.S. treaty, as well as (b) the RoK, by prejudicing its jurisdictional position
14 in other arbitrations. Notably, the RoK has not redacted out the remainder of the information
15 in that exhibit, which confirms the basis for its jurisdictional objection in the Arbitration, as
16 that information allows the U.S. public to understand why the RoK has made the Application
17 and the matters that this Court must decide in the Application.
18   In Exhibit C to the Duffy Declaration, the RoK has redacted out the particulars of its
19 arguments from the Arbitration to enforce compliance with four document requests, as well as
20 the specifics of Big Sky's arguments for opposing production, all of which are highly detailed
21 and give unnecessary insight into the manner in which both parties to the Arbitration are
22 running their cases. That information also specifically addresses other evidence that is not at
23 issue in this proceeding, the disclosure of which could expose both the RoK and Big Sky to
24 additional claims in other forums.
25   In Exhibit E to the Duffy Declaration, the RoK has redacted a limited portion of the
26 Tribunal's assent to the RoK's pursuit of the Application addressing the parties' submissions
27 and the Tribunal's reasoning for its decision. Importantly, the RoK has not redacted
28 information revealing that the Tribunal has imposed strict confidentiality obligations on the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 10 -

parties and has predicated its consent to the Application on the RoK's undertaking to preserve the Arbitration's confidentiality, which is among the bases for this Renewed Sealing Motion.

The information that the RoK has redacted from the Application and Brief either directly correlates to redactions in the exhibits, or concerns non-public positions taken by the parties, as well as rulings from the Tribunal that could prejudice one or both of the parties to the Arbitration if publicly disclosed.

In short, the limited information that the RoK has redacted is truly confidential and would be subject to protection even if it were somehow relevant to the Application. Consequently, there are compelling reasons for sealing that information.

**IV.  Disclosure of Facts About the Ongoing Arbitration Could Impede the Tribunal's Ability to Impartially Resolve It**

Unlike proceedings to enforce arbitral awards, where the underlying arbitration has concluded, where the arbitrators have completed their duties, and where the parties' rights have already been adjudicated, *see Ovonic Battery Co., Inc. v. Sanyo Elec. Co., Ltd.,* No. 14-CV-01637-JD, 2014 WL 2758756 (N.D. Cal. June 17, 2014); *Markel Am. Ins. Co. v. Internet Brands, Inc.*, No. CV 17-2429 (AJWX), 2017 WL 10433991 (C.D. Cal. Aug. 2, 2017), the Arbitration in this case is not only ongoing, but is still in the early merits phase. Consequently, the Tribunal in the Arbitration has not yet decided the merits of the parties' various positions, and has not yet ruled on their respective claims and defenses.

Unnecessary disclosure of sensitive information about the confidential Arbitration could impact the Tribunal's ability to neutrally execute those functions by improperly subjecting the Tribunal to public pressure on a number of issues. For instance, if detailed conspiracy allegations were publicly disclosed, the resulting public discourse and pressure could influence one or more of the Tribunal members to rule for reasons unrelated to the merits of the underlying dispute. Similarly, if detailed allegations about parties improperly employing corporate vehicles or abusing treaty rights to recover funds from a sovereign were made public, it could result in public outcry that pressures one or more Tribunal members to rule for reasons other than the merits.

In short, while the arbitrators are all highly-experienced adjudicators that are more than capable of exercising independent judgment in the context of a confidential arbitration, in a world where social media dominates, where un-vetted and uncorroborated information goes viral, and where people are publicly excoriated on the basis of allegations alone, the unnecessary disclosure of confidential information could impair the Tribunal's ability to independently perform its duties. *See* Gary B. Born, *International Commercial Arbitration*, Vol. II, pgs. 2276-77 (Wolters-Kluwer 2009) (explaining that "ICSID tribunals have emphasized that 'it would be of advantage to the orderly unfolding of the arbitral process if during the proceedings [the parties] limit public discussion of the case to what is considered necessary,' and that their 'mandate and responsibility includes ensuring that the proceedings will be conducted . . . in a regular, fair and orderly manner, [including] ensuring that potential inhibitions and unfairness do not arise . . . .'" (internal citations omitted)). Accordingly, "concerns regarding 'procedural integrity' and order, as well as preventing aggravation of the parties' dispute," are compelling ones that militate in favor of sealing confidential information as the RoK has requested. *See id.*, pg. 277 (internal citations omitted); *see also* Nigel Blackaby and Constantine Partasides with Allen Redfern and Martin Hunter, *Redfern and Hunter on International Arbitration*, § 2.176 (Oxford University Press, 5th Ed. 2009) (relating that "[o]ne of the advantages of arbitration is that it is a private proceeding, in which the parties may air their differences and grievances . . . without exposure to the gaze of the public and the reporting of the media.").

Moreover, concerns about the unnecessary disclosure of information in this case are particularly acute in the current political climate because: (1) trade treaties, such as the one under which the Arbitration arises, have become objects of public derision amongst a significant and vocal portion of the population; and (2) corruption allegations involving former Soviet republics have become extremely charged in the United States in recent months. While those aspects of the Arbitration are unrelated to its merits, they could nevertheless become significant distractions if latched on to by the public. Consequently, the disclosure of facts unnecessary to the public's understanding of the Application could unfairly impede the

Tribunal's ability to execute its mandate in the Arbitration, which provides a compelling reason for granting the Renewed Sealing Motion.

V. **Unnecessary Disclosure Could Negatively Impact FDI in the RoK and the Value of Its Public Debt**

The improper and unnecessary disclosure of allegations from the underlying Arbitration could also impact the RoK's ability to attract FDI and the value of its publicly issued debt.

Countries generally enter into bilateral investment treaties ("BITs") such as the one that gave rise to the Arbitration because BITs are generally believed to help attract FDI. *See* Niti Bhasin and Rinku Manocha, *Do Bilateral Investment Treaties Promote FDI Inflows? Evidence from India*, VIKALPA, Vol. 41, Issue 4, pg. 278 (Sage 2016) (discussing the impact of bilateral investment treaties on FDI flows). Whether BITs themselves encourage FDI, or whether BITs merely indicate that a host state is a friendly destination for FDI, it is undeniable that allegations such as the ones at issue in the Arbitration could negatively impact investors' views of the RoK, and therefore reduce the amount of FDI that the RoK receives. Keeping unproven allegations that are not necessary to the resolution of the Application sealed will help avoid that harm by protecting the RoK's ability to continue attracting FDI.

The RoK, like most countries, also issues bonds to raise funds. *See Kazakhstan's €1.050 Billion Euro-Denominated Bonds Offering*, Global Legal Chronical (Jan. 17, 2019) (discussing the RoK's "US$10 billion global medium term note programme and issuance thereunder of €525 million 1.55 percent Notes due 2023 and €525 million 2.375 percent Notes due 2028"), *available at:* https://www.globallegalchronicle.com/kazakhstans-e1-050-billion-euro-denominated-bonds-offering/. It is axiomatic that the unnecessary disclosure of unproven conspiracy allegations against public instrumentalities could negatively and unfairly impact existing bonds values, as well as the RoK's ability to successfully issue future bonds. Consequently, there are real detrimental consequences to needlessly disclosing confidential information the RoK has redacted, which provides a compelling reason for sealing it. *See Center for Auto Safety*, 809 F.3d at 1097-98 (relating that concerns must rely on more than hypothesis or conjecture).

### VI. The Tribunal Conditioned Its Assent to This Application on the RoK's Undertaking to Preserve Confidentiality

Lastly, it is critical for the Court to keep in mind that the Tribunal not only imposed a strict confidentiality order in the Arbitration, but specifically noted that the RoK would seek to comply with that obligation by preventing the unnecessary disclosure of confidential information when assenting to the RoK's Application. While the RoK is cognizant of the fact that a confidentiality order alone may not provide compelling reasons for sealing documents from a concluded arbitration, *see Ovonic Battery Co., Inc.*, 2014 WL 2758756, at *3, the Tribunal clearly believes that confidentiality is important to the proper functioning of the ongoing Arbitration, which is a compelling reason in this context for granting the RoK's request. Consequently, the Court should respect the Tribunal's judgment in that regard by granting the Renewed Sealing Motion.

## CONCLUSION

For the reasons set forth above, the RoK's Renewed Motion to Seal should be granted.

Respectfully Submitted,

DATED this 21st day of October, 2019

*/s/ Christina M. Vitale*
Christina M. Vitale
Attorneys for Applicant
The Republic of Kazakhstan
REED SMITH LLP
811 Main Street, Suite 1700
Houston, Texas 77002-6110
cvitale@reedsmith.com
Tel.: (713) 469-3800
Fax: (713) 469-3899

James P. Duffy IV
(admitted *Pro Hac Vice*)
Philip W. Danziger
(admitted *Pro Hac Vice*)
599 Lexington Avenue
New York, New York 10022
Tel.: (212) 521-5400
Fax: (212) 521-5450

REED SMITH LLP
A limited liability partnership formed in the State of Delaware